IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CYRIL M. LOGAR,
R. STEPHEN SEARS,

     Plaintiffs,

  v.

WEST VIRGINIA UNIVERSITY BOARD
OF GOVERNORS, including members from
2008 through the present, a West Virginia state
board; MARY ROBERTA BRANDT,
individually and as former Vice President for
Legal Affairs and General Counsel at West
Virginia University and adjunct professor of
law; BEVERLY D. KERR, individually and as
Deputy General Counsel for West Virginia
University; MARJORIE A. MCDIARMID,
individually and as the Steptoe and Johnson
Professor of Law and Technology and
Academic Integrity Officer for West Virginia
University; MICHAEL S. GARRISON,
individually and as former President of West
Virginia University; C. PETER MCGRATH,
individually and as former interim President of
West Virginia University; JAMES P.
CLEMENTS, individually and as current
President of West Virginia University; and E.
JANE MARTIN, individually and as former
Provost of West Virginia University,

     Defendants.

Civil Action No. 1:10-cv-201

**JURY TRIAL DEMANDED**

## **COMPLAINT**

AND NOW COME the Plaintiffs, Cyril M. Logar ("Dr. Logar") and R. Stephen Sears ("Dr. Sears") (together, "Plaintiffs"), by and through their counsel, Robert J. Ridge, Esq. (Logar), and John H. Tinney, Esq. and Thomas A. Clare, Esq. (Sears), and for their Complaint against the Defendants do hereby aver and allege as follows:

{01183113}

## INTRODUCTION

1.  This is a civil rights action brought under 42 U.S.C. § 1983 to redress the deprivation of Plaintiffs' liberty and property rights by Defendants without due process as required by the Fourteenth Amendment to the United States Constitution and Article III, Section 10 of the West Virginia Constitution.  Defendants knowingly and intentionally sabotaged Plaintiffs' reputations, deprived them of certain benefits and privileges commensurate with their positions as administrators and tenured faculty members at West Virginia University, and failed to adhere to West Virginia University's established procedures for conducting academic misconduct investigations, all without affording Plaintiffs due process.  Plaintiffs seek damages and declaratory and injunctive relief for the constitutional violations committed by Defendants, including recovery for the damage Defendants have caused to Plaintiffs' professional reputations and to their positions at West Virginia University.

## THE PARTIES

1.  Plaintiff Cyril M. Logar is an individual residing at 175 Lone Pine Drive, Masontown, West Virginia 26542.  At all times material to the claims asserted in this Complaint, Dr. Logar was and continues to be a tenured faculty member at West Virginia University ("WVU").  Dr. Logar also formerly was the Associate Dean of the College of Business and Economics at WVU, a position that he no longer holds.

2.  Plaintiff R. Stephen Sears is an individual residing at 220 Lake Powell Drive, Laredo, TX 78041.  At all times material to the claims asserted in this Complaint, Dr. Sears was a tenured faculty member at WVU and the Dean of the College of Business and Economics.  Dr. Sears no longer holds any positions at West Virginia University.

3. Defendant West Virginia University Board of Governors ("WVU Board of Governors"), is the institutional governing board appointed by the Governor of the State of West Virginia, as authorized by W. Va. Code § 18B-2A-1.

4. At certain times material to the allegations set forth in this Complaint, Defendant Mary Roberta Brandt ("Brandt") was the Vice President of Legal Affairs and General Counsel at WVU and was employed by West Virginia University. She was directly controlled, managed, and supervised by the President of WVU. Brandt is a lawyer who is licensed in the State of West Virginia by the West Virginia State Bar, and, upon information and belief, her license currently is in the active status. Brandt became Vice President for Legal Affairs and General Counsel at WVU when Alexander Macia resigned his position as Vice President for Legal Affairs and General Counsel in 2008.

5. Defendant Beverly D. Kerr ("Kerr") is the Deputy General Counsel for WVU and is an employee of West Virginia University. Kerr is a lawyer who is licensed in the State of West Virginia by the West Virginia State Bar, and, upon information and belief, her license currently is in the active status. At certain times material to the allegations in this Complaint, Kerr was directly supervised, controlled, and managed by Defendant Brandt as part of the WVU office of the Vice President for Legal Affairs and General Counsel.

6. Defendant Marjorie A. McDiarmid ("McDiarmid") is the Steptoe and Johnson Professor of Law and Technology and is serving as the Academic Integrity Officer for WVU, and she is an employee of West Virginia University. McDiarmid is a lawyer who is licensed in the State of West Virginia by the West Virginia State Bar, and, upon information and belief, her license currently is in the active status.

7. Defendant Michael S. Garrison ("Garrison") is the former President of West Virginia University. Garrison is a lawyer who is licensed in the State of West Virginia by the West Virginia State Bar, and, upon information and belief, his license currently is in the active status. Upon information and belief, his current business address is 48 Donley Street, Suite 800, Morgantown, WV 26501.

8. Defendant C. Peter McGrath ("McGrath") is the former interim President of West Virginia University. Upon information and belief, his current business address is Binghamton University, SUNY, P.O. Box 6000, Binghamton, NY 13902-6000.

9. Defendant James P. Clements ("Clements") is the current President of West Virginia University. Upon information and belief, his current business address is 103 Stewart Hall, P.O. Box 6201, Morgantown, WV 26506-6201.

10. Defendant E. Jane Martin is the former Provost of West Virginia University. Upon information and belief, her current address is 222 Zimmer Lane, Waynesburg, PA 15370.

11. Defendants are "persons" as that term is used in 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

12. The claims made in this Complaint are brought pursuant to 42 U.S.C. § 1983, and the jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This court has jurisdiction to hear any additional state law claims set forth herein pursuant to 28 U.S.C. § 1367.

13. A substantial portion of the events giving rise to the claims asserted in this Complaint occurred in this federal district, in Morgantown, West Virginia, and therefore venue lies in this District pursuant to 28 U.S.C. § 1391.

## BACKGROUND FACTS

### The Disputed eMBA Degree

14. As reported publically in the media, on or about October 11, 2007, a regional media outlet contacted WVU for the purpose of inquiring as to whether a particular student (referred to here and throughout the remainder of this Complaint as "Student A") completed and earned an "eMBA" degree at WVU.

15. From the time the media outlet made its initial inquiry concerning Student A on October 11, 2007, through at least October 23, 2007, Alexander Macia ("Macia"), then Vice President for Legal Affairs and General Counsel at WVU, and members of his office, were directly involved in the events and participated in the meetings and communications among the various WVU personnel, including Plaintiffs, who were requested by the WVU Administration to respond to the media outlet's inquiry.

16. The office of the Vice President for Legal Affairs and General Counsel at WVU is responsible for providing in-house legal counsel for West Virginia University and its several branches across the state of West Virginia.

17. Moreover, at all times relating to this specific time period from October 11, 2007, through October 23, 2007, Macia was asked to and did provide specific legal advice and direction to Plaintiffs and others who were requested by WVU administration to respond to the media outlet's inquiry concerning Student A.

18. Specifically, on or around October 12, 2007, then-Provost of WVU Gerald Lang requested that several WVU administrators, faculty, and staff investigate the issue of whether Student A had, in fact, earned her degree at WVU. Among others, both Dr. Logar and Dr. Sears were recruited by Lang to conduct the investigation. At this point, Lang had already reviewed

Student A's grade records at WVU and had discovered several discrepancies regarding course completion.

19. After conducting the investigation, Plaintiffs concluded that Student A had not, in fact, completed the necessary coursework to earn the eMBA degree.

20. On October 15, 2007, then-President Garrison's chief of staff Craig Walker ("Walker") called a meeting to review the issues concerning Student A and whether she had earned her eMBA degree at WVU. The meeting was led by Walker, and Plaintiffs were required to attend. Also in attendance were a number of other individuals from WVU Administration and the College of Business and Economics, including Macia, Lang, Jerry Blakely, then-Director of the MBA program ("Blakely"), and Paul Speaker, the director of the MBA program during Student A's attendance at WVU ("Speaker").

21. At the October 15, 2007 meeting, the attendees determined that Student A had been told by Speaker that she had earned her eMBA degree, although the review of the program's records showed a number of significant discrepancies. Based on the statements made by Speaker and Walker at the meeting, Macia told the attendees at the meeting that Student A had earned her degree. Based on Macia's conclusion and his accompanying legal advice, it was determined to acknowledge Student A's belief that she had, in fact, earned her degree. Macia also advised the attendees at the meeting of the potential adverse legal consequences of not awarding the degree to Student A.

22. After the October 15, 2007 meeting, Dr. Sears charged Dr. Logar and Blakely with conducting a complete and thorough review and audit of the WVU eMBA Program and each of its students and their records from the program's inception. WVU personnel assisted in conducting the audit where appropriate.

23. Acting upon the legal advice provided by Macia and at Lang's direction, on October 23, 2007, Dr. Sears sent a letter to the inquiring media outlet, responding to its recent inquiry and advising that Student A had earned her degree at WVU.

24. The media outlet subsequently submitted the first of three specific Freedom of Information Act (FOIA) requests to WVU for all documentation and communications among WVU personnel concerning Student A, whether she had earned an eMBA degree, and WVU's inquiry in that regard.

25. The media outlet's FOIA requests were handled by Macia and the lawyers and staff in his office who were directly under his control, management, and supervision.

26. As reported publicly by the media, Lang, after consultation with WVU's President and in accordance with Macia's advice, called for the creation of a team of independent educators to investigate, audit and attest to the accuracy of WVU's recent decision regarding a retroactively-issued degree to Student A ("Special Investigative Panel").

27. Lang, also on Macia's advice, prepared and submitted a Charge to the Special Investigative Panel selected in accordance with the demands of the WVU Faculty Senate.

28. WVU's *Policy and Procedures for Responding to Allegations of Academic Misconduct* (attached hereto as Exhibit "A") provide the procedures by which investigations into allegations of academic misconduct are performed. The *Policy and Procedures* include a very specific set of steps through which the investigation must go, including the appointment of a "Screening Subcommittee" and "Discovery Subcommittee." *See* Exhibit "A," p. 5.

29. The Charge to the Special Investigative Panel for Review of Executive MBA (eMBA) Program Records encouraged and called for the Panel to utilize and consult with the University's Academic Integrity Officer, Defendant McDiarmid, and others as the Panel deemed

necessary. McDiarmid provided legal counsel to the Panel, and also made many important decisions affecting the investigation.

30. In April 2008, the Special Investigative Panel completed its work and issued the "Report of the Special investigative Panel for Review of Executive MBA Program Records," which has been reported publicly and made available in the public domain.

31. As reported publicly in the media, on or about April 24, 2008, the WVU Board of Governors disclosed to the public the Report of the Special Investigative Panel for Review of Executive MBA Program Records called for by Lang.

32. On May 27, 2008, Garrison spoke with McDiarmid regarding his purported concerns over how the Student A matter was handled by the administrators he had requested to examine the matter following the media outlet's inquiry.

33. On May 30, 2008, the then-President submitted a letter to McDiarmid in which he requested an investigation of the "potential academic misconduct committed by Stephen Sears . . ., or any others who might have been involved."

34. On June 6, 2008, the President submitted his resignation, effective August 31, 2008.

35. On June 16, 2008, the Office of General Counsel sent a memorandum to Dr. Logar and Dr. Sears, stating that the Academic Integrity Committee had requested the cooperation of the General Counsel's office in the Student A investigation. The memorandum instructed Dr. Logar and Dr. Sears to make available any and all documents relevant to the Student A investigation, thus giving Dr. Logar and Dr. Sears specific legal advice and direction.

36. McDiarmid, acting as the Academic Integrity Officer and as Chairperson of the Screening Subcommittee, named a number of individuals, including Defendant Kerr, then-Deputy General Counsel at WVU, to serve as members of the Screening Subcommittee.

37. As evidenced from a careful review of the July 17, 2008 report of the Screening Subcommittee, Macia and other persons acting in the General Counsel's office submitted certain documents for review by the Screening Subcommittee, which included Defendant Kerr, who was also employed in the General Counsel's office at that very same time.

38. In spite of the fact that Macia, the then-Vice President for Legal Affairs and General Counsel, had actively participated in the meeting of October 15, 2007, as noted above, and provided legal advice and counsel to Plaintiffs and others who attended the meeting, and in spite of the fact Macia also was involved in other communications concerning the Student A matter during the period from October 11, 2007 to October 23, 2007, the Screening Subcommittee found that "there is no testimony or documentary evidence known to the subcommittee at this time that indicates Mr. Macia or Mr. Garrison knew of or were involved with the generation of the records sent to admissions and records."

39. No reference at all was made by the Screening Subcommittee to the fact that Macia, as WVU's General Counsel, had given legal advice and actively participated in the meeting of October 15, 2007, and also participated in communications regarding the Student A matter both before and after that meeting.

40. Following the submission of the Screening Subcommittee Report, Defendant McDiarmid, still acting as Academic Integrity Officer, named a Discovery Subcommittee Hearing Panel under the applicable *Policy and Procedures*.

41. Defendant Kerr attended the hearings of the Discovery Subcommittee and served as its legal counsel.

42. The Discovery Subcommittee stated in its Final Report, among other things, that:

> Logar was copied on emails about searching through the records with Blakely . . . and received a "Plan of Study" reflecting proposed modifications . . . .  He did not physically prepare grade modifications but as associate dean for academic affairs and as a senior faculty member would have known the steps that were being taken . . . .

43. The Discovery Subcommittee further stated, in reference to Macia, that:

> Based upon review of the evidence the Discovery Subcommittee concurs with the conclusion of the Screening Subcommittee and did not find evidence sufficient to justify the inclusion of Counsel Macia as a respondent.

It made the same conclusion with regard to President Garrison.

44. The Discovery Subcommittee stated, in reference to Dr. Sears, that:

> Sears acknowledged signing the grade modification forms and a memo that he states were prepared for him.

45. Thus, Plaintiffs both communicated and counseled with, and were advised and assisted by, members of WVU's General Counsel's office throughout the entire Student A matter.

46. Despite this fact, in December 2008, McDiarmid sent letters to both Dr. Logar and Dr. Sears informing them that they, as well as several other individuals, including Lang, were being charged with academic misconduct.

### Gerald Lang's Verified Petition for Writ of Prohibition

47. On February 24, 2009, Lang filed a Verified Petition for Writ of Prohibition in the Circuit Court of Monongalia County, West Virginia.  In his Verified Petition, Dr. Lang alleged that, by actively advising and counseling the faculty members present at the October 15, 2007

meeting, and then directly participating in the investigation and academic misconduct proceedings brought against those individuals, Defendants Brandt, Kerr, and McDiarmid arbitrarily and capriciously perpetuated a clear conflict of interest in violation of those faculty members' constitutionally-protected rights to due process.

48. These Defendants filed Motions to Dismiss Dr. Lang's verified petition, and Plaintiffs also moved to intervene in the petition.

49. A hearing on Dr. Lang's petition was held before Judge Susan B. Tucker on April 22, 2009. Judge Tucker then issued an Order on April 24, 2009, in which she granted Dr. Lang's request for a Writ of Prohibition, denied the Defendants' Motions to Dismiss, and denied Plaintiffs' Motions to Intervene. *See* Order, attached as Exhibit "B."

50. Specifically, Judge Tucker held as follows:

   (a) An inherent conflict of interest existed in the academic misconduct proceedings that deprived several WVU faculty members, Plaintiffs, of their due process rights (Exhibit "B," pp. 9-10);

   (b) Plaintiffs and the other participants in the October 15, 2007 meeting "had the right to expect that Mr. Macia was then acting as their lawyer in this specific matter and that his legal advice to them could naturally form the basis for their subsequent actions—the very same actions for which they are now being investigated and prosecuted for academic misconduct." (Exhibit "B," p. 10);

   (c) Defendants' actions directly violated WVU's *Policy and Procedures for Responding to Allegations of Academic Misconduct*, which requires that WVU take reasonable precautions to avoid bias and conflicts of interest. (Exhibit "B," pp. 10-11).

   (d) Defendants, "acting individually and in concert, have acted in an arbitrary and capricious manner and have violated Petitioner's constitutionally-protected due process rights in the manner in which they have conducted the investigation and handling of the complaint of academic misconduct filed against Lang and others." (Exhibit "B," p. 12).

   (e) Although the Court denied Plaintiffs' motions to intervene, "the interests of [Plaintiffs] accused of wrongdoing in this matter are identical to Lang's interests. Having fully considered the circumstances of the accusations

and the AIC procedures thus far implemented, the Court is of the opinion that the rights of all the accused have been violated . . . ." (Exhibit "B," p. 13).

51. Judge Tucker therefore granted Lang's Petition and terminated the academic misconduct proceedings against Plaintiffs and others, and required the respondents to initiate, if they cared to do so, alternative procedures to insure that Plaintiffs' due process rights were protected. (Exhibit "B," p. 10).

### Defendants' Subsequent Refusal to Comply with WVU's Policy and Procedures for Responding to Allegations of Academic Misconduct

52. After Judge Tucker issued her Order of April 24, 2009, the respondents filed Motions to Amend the Order. Briefs in support and in opposition to those Motions were filed with the court, but the Motions have remained undecided.

53. WVU's *Policy and Procedures for Responding to Allegations of Academic Misconduct* provide as follows:

(a) "Inquiries and investigations will be conducted in a manner that will ensure fair treatment of the respondent, and confidentiality to the extent possible without compromising public health and safety or an unbiased and thorough investigation. While an inquiry or investigation is underway, the Academic Integrity Officer will ensure that the respondent does not suffer retaliation from other members of WVU in the terms and conditions of employment, academic standing, or other status at the University, and will review instances of alleged retaliation for appropriate action." Exhibit "A," pp. 3-4.

(b) "If no misconduct is found, the Academic Integrity Officer, after consulting with the respondent and the Deciding official, will undertake diligent efforts to restore the respondent's reputation." Exhibit "A," p. 4

(c) "The [Academic Integrity] Officer will ensure that the [Hearing] Panel is free of bias and real or apparent conflicts of interest . . . ." Exhibit "A," p. 10.

(d) "The [Academic Integrity] Officer will ensure that individuals involved in cases of academic misconduct do not suffer retaliation from other members of WVU in the terms and conditions of their employment, academic standing, or other status at the University. The Officer will

    review instances of alleged retaliation for appropriate action." Exhibit "A," p. 11.

 (e) "The Officer will ensure that inquiries, investigations, and hearings are conducted in a manner that will ensure fair treatment of the respondent, and confidentiality to the extent possible without compromising public health and safety or an unbiased and thorough investigation." Exhibit "A," p. 11.

54. Despite the fact that a clear conflict of interest existed during the entire investigative process regarding the charges of academic misconduct brought against Plaintiffs and others, and despite the fact that Judge Tucker terminated WVU's academic misconduct proceedings because of this conflict of interest, Defendants have continued to fail to provide due process to Plaintiffs in violation of WVU's own established policies and procedures regarding charges of academic misconduct.

55. The entire matter regarding Student A and Plaintiffs' involvement has been highly publicized by local, regional, and national media since October 2007. Since that time, thousands of articles, stories, and other references to this matter have been published, many of which identify Plaintiffs by name. These include national media outlets like the Associated Press, USA Today, the New York Times and msnbc.com.

56. Due to the highly-publicized proceedings and the absence of due process, Plaintiffs have been deprived of property and liberty interests in their employment at WVU.

57. Specifically, Dr. Logar lost his position as Associate Dean of the College of Business and Economics and the benefits and salary commensurate with that position.

58. Dr. Logar also has suffered damage to his reputation that has rendered him an outcast in the WVU community. Because of the damage to his reputation, Dr. Logar also has lost prospective consulting opportunities in the academic community which would have produced significant income for Dr. Logar.

59. Dr. Sears lost his position as Dean of the College of Business and Economics. Dr. Sears also was the only individual involved in this matter that was initially denied a merit raise to which he was entitled, in direct violation of the WVU *Policy and Procedures*, a fact that was publicized in the media. Dr. Sears is no longer a faculty member or administrator at WVU, and has lost all the salary, benefits, and privileges that accompany his former positions.

60. Dr. Sears also has suffered damage to his professional reputation and has been prevented from finding employment with several universities specifically because of the allegations made against him at WVU. For example, Dr. Sears was a finalist for the position of Dean at Marquette University when the story of Student A broke, and he was forced to withdraw from consideration. Other schools also expressed their interest in Dr. Sears, but were unable to consider him because of the media surrounding the WVU incident.

### **COUNT I – Denial of Procedural Due Process (42 U.S.C. § 1983)**

61. Plaintiffs incorporate herein by reference Paragraphs 1 through 60 of this Complaint.

62. By investigating and bringing charges of academic misconduct against Plaintiffs and others while a clear and flagrant conflict of interest existed with WVU's Office of General Counsel, Defendants knowingly and willfully violated Plaintiffs' Due Process rights guaranteed by the Fourteenth Amendment of the United States Constitution and Article III, Section II of the West Virginia Constitution.

63. Further, in conducting the investigation and bringing charges against Plaintiffs, Defendants violated and continue to violate their own *Policy and Procedures* related to academic misconduct proceedings by failing to ensure that the process was free of conflicts of interest and was conducted in a fair and impartial manner. Defendants also have failed to rehabilitate

Plaintiffs' reputations and prevent any impermissible retaliation against Plaintiffs. Plaintiffs had a protected property interest in their expectation that Defendants would comply with these procedures.

64. As a direct and proximate result of Defendants' actions, as described above, Plaintiffs have been deprived of liberty and property interests without due process, including 1) damage to their professional reputations, 2) loss of consulting and other professional opportunities that would have produced significant future income, 3) loss of employment/professional status; and 4) loss of salary and benefits.

65. Because Plaintiffs were not permitted to intervene in Lang's state court Petition, Plaintiffs have no other adequate remedy at law and must seek redress for the violation of their constitutional rights in this Court.

WHEREFORE, Plaintiffs Cyril M. Logar and R. Stephen Sears respectfully request that the Court:

    (a) Enter judgment in their favor and against Defendants on Count I of the Complaint;

    (b) Enter any appropriate declaratory or equitable relief required to prevent the continued violation of Plaintiffs' constitutional rights, including, but not limited to, ordering Defendants to comply with WVU's *Policy and Procedures* and restore Plaintiffs' reputations;

    (c) Award all provable compensatory damages to Plaintiffs, as is appropriate;

    (d) Award Plaintiffs the reasonable costs and fees associated with bringing this action to enforce their federally-protected rights to due process; and

    (e) Make any other award that the Court deems just and proper.

### COUNT II – Denial of Substantive Due Process (42 U.S.C. § 1983)

66. Plaintiffs incorporate herein by reference Paragraphs 1 through 65 of this Complaint.

67. By investigating and bringing charges of academic misconduct against Plaintiffs and others while a clear and flagrant conflict of interest existed with WVU's Office of General Counsel, Defendants arbitrarily and capriciously violated Plaintiffs' substantive due process rights guaranteed by the Fourteenth Amendment of the United States Constitution.

68. Because of Defendants' conduct, Plaintiffs' were deprived of their constitutionally-protected rights to fundamental fairness in the proceedings brought against them by Defendants, and have been damaged as a result.

WHEREFORE, Plaintiffs Cyril M. Logar and R. Stephen Sears respectfully request that the Court:

    (a) Enter judgment in their favor and against Defendants on Count II of the Complaint;

    (b) Enter any appropriate declaratory or equitable relief required to prevent the continued violation of Plaintiffs' constitutional rights, including, but not limited to, ordering Defendants to comply with WVU's *Policy and Procedures* and restore Plaintiffs' reputations;

    (c) Award all provable compensatory damages to Plaintiffs, as is appropriate;

    (d) Award Plaintiffs the reasonable costs and fees associated with bringing this action to enforce their federally-protected rights to due process; and

    (e) Make any other award that the Court deems just and proper.

Respectfully submitted,

/s/ Robert J. Ridge

Dated: December 3, 2010

Robert J. Ridge
W. Va. Bar No. 7674
Daniel Tomassetti
W. Va. Bar No. 4367
THORP REED & ARMSTRONG, LLP
301 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA  15219
(412) 394-7711 (phone)

**JURY TRIAL DEMANDED**

(412) 394-2500 (facsimile)

1233 Main Street, Suite 4000
Wheeling, WV 26003-2839
(412) 394-7711

*Counsel for Cyril M. Logar*


/s/ John H. Tinney, Jr.
John H. Tinney, Jr.
W. Va. Bar No. 6970
THE TINNEY LAW FIRM PLLC
222 Capitol Street, Suite 500
Charleston, WV 25301
(304) 720-3310 (phone)
(304) 720-3315 (facsimile)

/s/ Thomas A. Clare
Thomas A. Clare, P.C.
(application for admission *Pro Hac Vice* pending)
KIRKLAND & ELLIS LLP
655 15th Street, N.W., 12th Floor
Washington, D.C. 20005
(202) 879-5000 (phone)
(202) 879-5200 (facsimile)

*Counsel for R. Stephen Sears*