IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CYRIL M. LOGAR and R. STEPHEN SEARS,

       Plaintiffs,

v.                                  Civil Action No. 1:10CV201
                                            (STAMP)

WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS,
including members from 2008 through the
present, a West Virginia State Board;
MARY ROBERTA BRANDT, individually and as
former Vice President for Legal Affairs and
General Counsel at West Virginia University
and adjunct professor of law;
BEVERLY D. KERR, individually and as Deputy
General Counsel for West Virginia University;
MARJORIE A. McDIARMID, individually and as the
Steptoe and Johnson Professor of Law and Technology and
Academic Integrity Officer for West Virginia University;
MICHAEL S. GARRISON, individually and as former
President of West Virginia University;
C. PETER McGRATH, individually and as former interim
President of West Virginia University;
JAMES P. CLEMENTS, individually and as current
President of West Virginia University; and
E. JANE MARTIN, individually and as former
Provost of West Virginia University,

       Defendants.


**MEMORANDUM OPINION AND ORDER**
**DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT**
**AND FOR LEAVE TO FILE AN AMENDED COMPLAINT**

I.  Procedural History

The plaintiffs, Cyril M. Logar and R. Stephen Sears, filed a complaint against the defendants in this Court pursuant to 42 U.S.C. § 1983.  The plaintiffs stated that the defendants deprived them of their liberty and property rights without due process, knowingly and intentionally sabotaged their reputations, deprived them of certain benefits and privileges commensurate with their

positions as administrators and tenured faculty members at West Virginia University ("WVU"), and failed to adhere to WVU's established procedures for conducting academic misconduct investigations. Thereafter, Marjorie A. McDiarmid filed a motion to dismiss, James P. Clements, C. Peter McGrath, and West Virginia University Board of Governors ("WVU BOG") filed a motion to dismiss, Mary Roberta Brandt and Beverly D. Kerr filed a motion to dismiss, and E. Jane Martin filed a motion to dismiss. On July 28, 2010, this Court entered an order notifying the parties of its intent of possible conversion of the motions to dismiss into motions for summary judgment as to the issue of the statute of limitations and directed the parties to submit affidavits to this Court in which the parties should provide this Court with certain dates relevant to the statute of limitations applicable to the plaintiffs' claims. The parties complied with this request.

On September 15, 2011, this Court converted the defendants' motions to dismiss into motions for summary judgment and granted each of the motions on the grounds that the plaintiffs' claims were time-barred by the two-year statute of limitations applicable to civil rights actions based upon the two-year statute of limitations in tort actions in West Virginia. The same day, this Court entered judgment in this matter, dismissing the case with prejudice.

Following dismissal, the plaintiffs filed a joint motion separately requesting that this Court alter or amend its judgment for the defendants pursuant to Federal Rule of  Civil Procedure

59(e), and that it grant leave to the plaintiffs to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).  In the motion, the plaintiffs argue that they should be given leave to amend their complaint to add contract-based and 42 U.S.C. § 1982 claims which they believe do not implicate the statute of limitations issues addressed in this Court's memorandum opinion and order dismissing the case.  They further request that this Court reconsider its prior determination regarding the application of the statute of limitations to time-bar the claims in their original complaint, claiming that this Court's original opinion constituted plain error.

The defendants filed a joint memorandum in response in which it is argued that the plaintiffs' motion for leave to amend should be denied on the bases of undue delay and prejudice to the defendants.  Additionally, the defendants argue that the plaintiffs' motion to alter or amend judgment should be denied because no new information has been introduced by the plaintiffs which justifies a request for reconsideration of this Court's original opinion, and that the plaintiffs are attempting to use this motion to raise arguments which could have been raised before the judgment in this case, which, they argue, is inappropriate. The plaintiffs timely replied to this response.

This motion is now fully briefed and ripe for review.  For the reasons set forth below, the plaintiffs' motion to alter or amend the judgment and for leave to file an amended complaint is DENIED.

II.   <u>Facts</u>[1]

In October 2007, a local media outlet contacted West Virginia University ("WVU") inquiring about whether a particular student ("Student A") completed and earned an "eMBA" degree at WVU.   The plaintiffs, then Dean and Associate Dean of the College of Business and Economics at WVU, conducted an investigation at the request of then Provost, Gerald Lang, and concluded that Student A had not completed the degree.   On October 15, 2007, the plaintiffs attended a meeting allegedly called by defendant and then WVU President Michael Garrison.   Then WVU General Counsel Alex Macia, Lang, and then director of the MBA program Paul Speaker were also allegedly at the meeting.   The plaintiffs aver that General Counsel Macia advised them that Student A had earned the degree.   Plaintiff Sears states that he was told to send a letter to the inquiring media outlet, stating that Student A had earned her degree.

The media outlet then made three Freedom of Information Act ("FOIA") requests.   In April 2008, a special investigative panel from the media outlet issued a report regarding their findings.   On May 30, 2008, Garrison submitted a letter to defendant McDiarmid, Academic Integrity Officer for WVU, in which he requested an investigation of the potential academic misconduct committed by plaintiff Sears and/or any other person.   Garrison then submitted

_____

[1]With the exception of the date the plaintiffs received the screening subcommittee report, the facts contained in this memorandum opinion and order are obtained from the plaintiffs' filings.   The date the plaintiffs received the screening subcommittee report comes from the parties' affidavits.

his resignation as president of WVU on June 6, 2008, effective August 31, 2008. The Office of General Counsel sent a memorandum to the plaintiffs on June 16, 2008, informing them that the Academic Integrity Committee had requested the cooperation of the General Counsel's office in the Student A investigation. The memorandum instructed the plaintiffs to make available any and all documents relevant to the investigation. The plaintiffs contend that this constituted specific legal advice and direction to the plaintiffs.

Defendant McDiarmid named several individuals to serve on the screening subcommittee, including defendant Kerr, then deputy general counsel at WVU. The screening subcommittee issued a report on July 17, 2008. McDiarmid mailed the plaintiffs this report via university mail on July 21, 2008. On August 1, 2008, counsel for Sears sent McDiarmid a letter seeking an extension of time to respond to the screening subcommittee report. On August 5, 2008, Logar sent McDiarmid a letter responding to the screening subcommittee report. The plaintiffs state that Macia and other persons acting in the General Counsel's office submitted documents for review by the screening subcommittee, which included Kerr, who was also employed in the General Counsel's office at the same time. The screening subcommittee report stated that no testimony or documentary evidence indicated that Macia or Garrison knew of or were involved with the generation of the records sent to admissions and records. The plaintiffs state that no reference was made by

the screening subcommittee to the alleged fact that Macia had given legal advice and actively participated in the October 15, 2007 meeting, or that he had participated in communications regarding the Student A matter before and after the meeting.

Defendant McDiarmid then named a discovery subcommittee hearing panel. In December 2008, defendant McDiarmid sent letters to the plaintiffs informing them that they were being charged with academic misconduct. The plaintiffs allege that Kerr attended the hearings of the discovery subcommittee and served as its legal counsel. The discovery subcommittee brought charges of academic misconduct against the plaintiffs on December 3, 2008. The subcommittee's report contained the affirmative statements that records were fabricated, grades falsified, and that the plaintiffs had failed to comply with institutional requirements related to teaching and learning.

On February 24, 2009, Lang, who was also charged with misconduct by the screening subcommittee, filed a petition for writ of prohibition with the Circuit Court of Monongalia County, which sought to terminate disciplinary proceedings due to conflict of interest. The plaintiffs in this action moved to intervene in these proceedings on April 20, 2009, and the petition was heard by the Susan B. Tucker, Monongalia County Circuit Court Judge, on April 22, 2009. Judge Tucker granted Mr. Lang a writ of prohibition, but denied the plaintiffs' motions to intervene, deeming those motions untimely because they were filed two days

before the hearing when the original petition had been pending for two months beforehand.  However, Judge Tucker acknowledged that the plaintiffs were subject to the same misconduct proceedings, and that she was of the opinion that their rights were similarly infringed by, among other things, the WVU Office of General Counsel's conflict of interest, which caused her to grant Mr. Lang's writ.  Judge Tucker terminated the academic integrity proceedings entirely.

Following Judge Tucker's order terminating the proceedings, the respondents in that case[2] appealed, and Judge Tucker reaffirmed her opinion on January 24,2011.  However, on July 15, 2011, her previous orders were vacated following a settlement agreement between Lang and the respondents in that case.  At no time during the pendency, appeal, or ultimate dismissal of the Lang petition, were the either of the plaintiffs in this action made parties to the proceedings.

On December 3, 2010, the plaintiffs filed this civil action under 42 U.S.C. § 1983.  Count I of the complaint alleged denial of procedural due process by the investigation and bringing of charges of academic misconduct while a conflict of interest existed with WVU's Office of General Counsel.  The plaintiffs also alleged that in conducting the investigation and bringing charges, the

---

[2]The respondents to the Lang petition were the same parties as the defendants named in this case with the exceptions of defendant Michael S. Garrison, James P. Clemens and E. Jane Martin, all of whom are defendants in this case but were not named as respondents to the Lang petition.

defendants violated and continue to violate their own Policy and Procedures related to academic misconduct proceedings by failing to ensure that the process was free of conflicts of interest and was conducted in a fair and impartial manner. Count II of the complaint alleged denial of substantive due process by the investigating and bringing charges of academic misconduct while a conflict of interest existed with the General Counsel's office. In addition, the plaintiffs contended that the defendants deprived them of their rights to fundamental fairness in the proceedings.

## III. <u>Applicable Law</u>

A. <u>Motion for Leave to Amend Complaint</u>

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that, after a defendant files a responsive pleading, and either leave of court or permission of the opposing party is necessary to amend a complaint, requests for such leave should nonetheless be granted "freely . . . when justice so requires." The Supreme Court has held that, "in the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'" <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

This is true even when leave to amend is requested after the district court has entered judgment in a case. <u>See Laber v. Harvey</u>, 438 F.3d 404 (4th Cir. 2006) (holding that the standard for

8

granting a post-judgment leave to amend is the same as it is for granting a pre-judgment motion for the same).  This is because, in the Fourth Circuit, "delay alone" is not sufficient reason to deny a motion for leave to amend.  Therefore, the simple fact that judgment has been entered is not grounds, without more, for denying leave to amend.  Id. at 427.  However, the post-judgment climate is a major factor in the consideration of the other factors relevant to the inquiry, most especially those of bad faith and prejudice to the opposing party.  See id. and Adams v. Gould, 739 F.2d 858, 864 (both remarking that the analysis of the factors will be influenced by the fact that judgment has been entered before leave to amend was sought).

The most significant difference between pre-judgment motions to amend and post-judgment requests is that, when judgment has been entered, it must be vacated pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) before leave to amend may be granted.  See Laber, 438 F.3d at 427.  However, the inquiry regarding whether or not to vacate the judgment in order to allow a post-judgment motion for leave to amend is not that of either Rule 59(e) or 60.  Rather, the standard to be employed is simply that of Rule 15.  The Court must simply decide whether to grant leave to amend, and if leave is appropriate, the original judgment should be vacated.  Katyle v. Penn National Gaming, Inc., 637 F.3d 462, 470-71 (4th Cir. 2011).

9

B.   <u>Motion to Alter or Amend Judgment</u>

The plaintiffs also request in this motion that this court alter or amend its judgment in this case based upon the merits of that judgment, pursuant to Federal Rule of Civil Procedure 59(e). The United States Court of Appeals for the Fourth Circuit has recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. <u>Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.</u>, 148 F.3d 396, 403 (4th Cir. 1998). "[Federal] Rule [of Civil Procedure] 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." <u>Id.</u>  A Rule 59(e) motion may not be used to relitigate old matters and is an extraordinary remedy that should be used sparingly.  <u>Id.</u>  It is improper to use such a motion to ask the court to "rethink what the court has already thought through -- rightly or wrongly."  <u>Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.</u>, 99 F.R.D. 99, 101 (E.D. Va. 1983).

IV.   <u>Discussion</u>

A.   <u>Motion for Leave to Amend</u>

While leave to amend cannot be granted post-judgment without vacating the original judgment in the matter, these plaintiffs have not only requested that the judgment in this case be vacated based

10

upon their request for leave to amend, but also based upon the merits of this Court's original opinion. As a result, this Court finds it appropriate to initially decide whether its judgment can be vacated based upon Rule 15(a) standards before determining whether to vacate its judgment based upon the merits of the opinion. After consideration of the motion for leave to amend, the facts of this case and the controlling law, this Court is of the opinion that the plaintiffs' joint motion for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(1) must be denied.

Whether or not to grant leave to amend is within the discretion of the district court, and the goals of Rule 15 of the Federal Rules of Civil Procedure, as well as the "interests of justice" must always be weighed when considering such a motion. Equal Rights Ctr. v. Niles Bolton Assocs., 602 F.3d 597, 602-03 (4th Cir. 2010). While the Fourth Circuit has determined that delay alone, without more, is insufficient to justify denial of a motion to amend, courts often consider unexcused delay, or undue delay without reasonable excuse, as sufficient. See 6 Charles Alan Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1488 (3d ed. 2010); Ondis v. Barrows, 538 F.2d 904, 909 (1st Cir. 1976); Vielma v. Eureka Co., 218 F.3d 458 (5th Cir. 2000); Twohy v. First Nat'l Bank of Chicago, 758 F.2d 1185, 1196-97 (7th Cir. 1985); Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d 1052 (8th Cir. 2005); Landon v.

Northern Natural Gas Co., 338 F.2d 17, 20 (10th Cir. 1964).  Such unexcused delay is often also considered evidence of dilatory motive and prejudice to the non-movant when leave to amend is sought after the district court has dismissed the plaintiff's claims.  While the Fourth Circuit has not directly endorsed unexcused delay as sufficient grounds for denying a motion for leave to amend, other circuits that agree that delay alone is insufficient have endorsed this approach, and have, in this Court's opinion, done so based upon sound reasoning rooted in the goals of the Federal Rules of Civil Procedure and in the interests of justice.

The Fifth Circuit in Vielma v. Eureka Co. explained that, while delay alone is insufficient grounds upon which to deny a motion to amend, it considers unexcused delay in filing a motion for leave to amend a sufficient basis for post-judgment denial of such a motion because, "much of the value of summary judgment procedure . . . would be dissipated" if a movant were allowed to rely on one theory until the district court finds that theory "unsound," then to return with another theory after unfavorable judgment is entered.  218 F. 3d at 469 (quoting Briddle v. Scott, 63 F.3d 364, 380 (5th Cir. 1995)).  In Vielma, the plaintiff, who moved for leave to amend to add federal claims to her original state law claims after the district court had dismissed her claims on summary judgment, admitted to the trial court that she had waited to add the federal claims because she believed that the

12

state law claims would be more successful at trial.   The Fifth Circuit there held that, "[the plaintiff] had ample notice of [the defendant's] summary judgment motion, including its stated ground that her [state law claims] were time-barred.   Accordingly, Vielma could have sought to amend her complaint . . . well before the court entered judgment. She did not do so, however, and the district court did not abuse its discretion in denying her leave to make a post-judgment amendment."   <u>Id.</u>

Similar holdings are prevalent throughout the federal district courts and are regularly upheld by the circuit courts of appeals. <u>See</u> Wright, et al. § 1488 n.30.   In <u>In re NationsMart Corp. Sec. Litig.</u>, 130 F.3d 309 (8th Cir. 1997), the Eighth Circuit upheld the district court's refusal to grant leave to amend to a plaintiff who sought leave following dismissal because, "the plaintiffs waited until two weeks after the dismissal of most of their case to attempt to remedy problems of which they were aware months before." <u>Id.</u> at 323.   The Seventh Circuit too, in <u>Twohy v. The First Nat'l Bank of Chicago</u>, 758 F.2d 1185 (7th Cir. 1985), upheld a district court's refusal to grant post-dismissal leave to amend for unexcused delay, remarking that "delay in presenting a post-judgment amendment when the moving party had an opportunity to present the amendment earlier is a valid reason for a district court not to permit an amendment." <u>Id.</u> at 1196 (internal citations omitted).

Further, the Fifth Circuit in <u>Mitsubishi Aircraft Int'l, Inc.</u> <u>v. Brady</u>, 780 F.2d 1199 (5th Cir. 1986), observed that, because the claim sought to be added to the plaintiff's complaint following dismissal was known to the plaintiff since the original filing date of the case, failure to seek leave to add it before dismissal "strongly suggest[ed] either a lack of diligence on its part or a lack of sincerity." <u>Id.</u> at 1203.

Here, much like in the above-cited cases, this Court finds that the plaintiffs were aware of the claims they now seek to add long before they sought leave to amend their prior-dismissed complaint. In fact, the plaintiffs were aware of these claims even before this case was filed over a year ago. This is evident, in part, from the original complaint filed in this case, which outlines with significant specificity, the defendants' alleged refusal to comply with WVU's Policy and Procedures for Responding to Allegations of Academic Misconduct. These alleged refusals form much of the basis for the claims that the plaintiffs now seek to add. It is noted that the aforementioned document is also attached to the plaintiffs' original complaint as Exhibit A.

The plaintiffs offer as explanation for their failure to request leave to amend until a month after this Court granted summary judgment, that Judge Tucker's order which terminated all academic misconduct proceedings on April 24, 2009 made the claims now sought to be added unnecessary at the time that the case was filed. Further, they say, until July 2011, when Judge Tucker

14

vacated her orders, the plaintiffs were protected from the possibility of prosecution.  The plaintiffs also argue that, until Judge Tucker denied a renewed motion to intervene in the case before her,[3] they had the continuing ability to protect their rights in this regard by intervening in the state court proceeding. This, the plaintiffs maintain, adequately explains their timing, and removes any possible inference of bad faith.

This Court finds these arguments to be unpersuasive.  While it is conceded that Judge Tucker's order of April 24, 2009 expressed her opinion that the plaintiffs' rights were being infringed upon by the misconduct proceedings in exactly the same ways that Mr. Lang's rights were infringed, the plaintiffs were not and were never at any time following that opinion, parties to, or protected by, that order.  In fact, Judge Tucker even affirmatively denied plaintiffs' attempts to become parties to the proceedings in her court.  Counsel for the plaintiffs in this case are highly experienced attorneys, and this Court is not convinced that they would have believed that the plaintiffs' rights were adequately protected or preserved by the proceedings before Judge Tucker.

Further, both the original complaint and the plaintiffs' proposed amended complaint allege that the defendants failed to follow the applicable university policies even after Judge Tucker originally terminated the misconduct proceedings; the proposed

---

[3]The Court presumes that this second denial occurred either at the time that Judge Tucker vacated her orders, or at some time contemporaneous to that action.

amended complaint even contends that "Defendants have repeatedly contended that either Judge Tucker's April 24, 2009 Order did not apply to Plaintiffs or, more simply, that the Academic Integrity Proceedings were still ongoing." (ECF No. 152-2, *19.)  Thus, the plaintiffs not only cannot be reasonably charged with the belief that they were protected by Judge Tucker's order, but by their own admission, they were allegedly experiencing ongoing refusal by the defendants to abide by that ruling and/or to admit that it applied to the plaintiffs, all throughout the nearly two and one-half intervening years between Judge Tucker's original order and the plaintiffs' current request to amend their complaint.

Even if this Court could reasonably conclude, despite the fact that the plaintiffs were never parties to the Judge Tucker proceedings, and despite the admissions in both the original and proposed amended complaints of ongoing alleged contractual violations, that the plaintiffs believed that their rights were adequately preserved and protected by the proceedings before Judge Tucker, it nonetheless must conclude that the delay in moving for leave to amend is undue and without adequate explanation.  The plaintiffs admit that Judge Tucker vacated her prior orders on July 15, 2011, and at that time, it became necessary for them to amend their complaint before this Court.  It is true that only three months elapsed between this action and the plaintiffs' request to amend on October 12, 2011, but it is these three months in the context of this litigation that make this delay undue.

All motions to dismiss in this case had been fully briefed and were before this Court for consideration by April 26, 2011.  This Court issued its memorandum opinion and order granting summary judgment and dismissing the case on September 15, 2011 -- thus, the plaintiffs were fully on notice of the defendants' allegations that the original complaint was time-barred for nearly five months before this Court granted summary judgment to the defendants. During this entire time, the plaintiffs were aware that their complaint may be deemed insufficient by this Court.  Further, on July 28, 2011, after Judge Tucker vacated her orders on July 15, 2011,[4] this Court informed the parties that it intended to convert the motions to dismiss to motions for summary judgment to allow the parties to submit affidavits with regard to the applicable statute of limitations.  Still, the plaintiffs stood by the validity of their original complaint and did not seek leave to add any new claims by amending their complaint. Finally, it was another two months after Judge Tucker vacated her orders, and after the aforementioned notification, that this Court entered its memorandum opinion and order granting summary judgment and dismissing this case.  At no point during this period when motions for summary

---

[4]In their reply to the defendants' response to their motion for leave to amend, the plaintiffs say that Judge Tucker vacated her previous orders without giving notice to Drs. Sears and Logar. This Court is unable to discern whether this is an allusion to an argument that the plaintiffs were unaware that the orders had been vacated for some time after the vacatur occurred.  However, it is clear to this Court that the plaintiffs were immediately aware of Judge Tucker's action as, on July 18, 2011, a brief was filed with this Court reporting the same.

judgment were pending, did the plaintiffs give any indication to this Court of an intent to amend their complaint.

The plaintiffs also maintain that their motion is not untimely because it was filed before the deadline to amend set forth in the original scheduling order in this case.  However, the context of the progression of this case following the issuance of that scheduling order makes this argument unpersuasive as well.  Simply because this Court set a deadline for amendments in the original scheduling order, does not mean that it cannot consider, under the individual circumstances of this case following the issuance of that order, whether amendment is appropriate at whatever time it may be requested, be it before that deadline or not.  Moses.com Securities, Inc., 406 F.3d at 1066 ("The date on the scheduling order does not confine the district court's consideration of the merits of [motions to amend] and does not preclude it from finding that an amendment would result in prejudice").

Further, the plaintiffs attempt to distinguish this case from many of the other cases where delay is cited as a ground for denial, by arguing that this case has not progressed into discovery, nor has a period of many years elapsed between the filing of the complaint and the request.  However, as the plaintiffs point out, just as courts cannot place arbitrary time limits on when a motion to amend can be granted, nor can arbitrary restrictions be placed upon when it can be deemed untimely.  The plaintiffs were fully aware of the availability of these claims,

18

even by their own time-line, two months before this Court granted summary judgment and three months prior to the time that they filed their motion to amend.  At the time, and for months beforehand, they were also aware of the possibility that this Court would find that their original complaint was untimely.  Nonetheless, they chose to stand behind their original complaint, and only when that complaint was dismissed, did they elect to move to amend.

This Court does not suggest that it infers bad faith or dilatory motive from these actions, but only that, in the climate of a post-dismissal motion for leave to amend, the facts of this case are such that this Court believes that the interests of justice weigh more heavily toward finality of judgment than toward granting leave to amend.  See Laber, 438 F.3d at 433 ("the interest in finality that attaches to every judgment must of necessity weigh in the exercise of the district court's discretion in [a post-judgment motion for leave to amend]")(Wilkinson J., concurring).

Further, the fact that the plaintiffs delayed in prosecuting claims that were known to them even before the filing of their original complaint, until a time following dismissal of this case stands, in itself, is a representation of substantial prejudice to the defendants.  The defendants have an interest in the finality of the judgment in their favor and would be prejudiced if they were unable to rely on such a judgment.  Additionally, while little discovery took place in this case, the defendants expended a significant amount of time and effort on the motions for summary

19

judgment based upon the original complaint, and would also be prejudiced by the fact that granting leave to amend in this case would, in effect, allow plaintiffs to hold claims "up their sleeve" so to speak, until such time that it is necessary to play all of their cards.  Such an approach to litigation is not favored under the Federal Rules of Civil Procedure.

Rule 15(a) is designed to allow parties the opportunity to amend pleadings "to assert matters which were overlooked or were unknown at the time the party interposed the original complaint." Wright, et al. § 1472.  Further the rule is intended to advance a basic goal of the Federal Rules of Civil Procedure; to allow "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." Id. at § 1471.  Neither of these purposes would be advanced by allowing the plaintiffs leave to amend here.  The plaintiffs are not being denied the ability to litigate their case on the merits based upon a procedural technicality.  They were aware of the possible defect in their complaint for many months before they sought to amend their complaint, and they failed to attempt to remedy the potential deficiencies until judgment had already been entered.  Further, the plaintiffs are not utilizing Rule 15(a) to add claims overlooked or not previously known to them at the time that they filed their complaint.

The plaintiffs would have this Court rely upon Laber v. Harvey to conclude that leave to amend should be granted because, in

20

Laber, the Fourth Circuit stressed that the same standard applies for analysis of a post-judgment Federal Rule of Civil Procedure 15(a) request as it does pre-judgment.  This Court acknowledges that this is true, and that delay alone based upon the fact that dismissal has been entered cannot serve as a basis for denial. However, the plaintiffs overlook a number of significant factual differences between Laber and the instant case, as well as a number of important aspects of the Fourth Circuit's opinion in that case which weigh heavily on this Court's analysis here.

As the Court of Appeals indicates repeatedly throughout the Laber opinion, the factual situation in that case was quite unique, and formed the strongest basis for the holding.  438 F.3d at 428. The plaintiff in Laber sought to amend his complaint after his original complaint failed because the Fourth Circuit, en banc, chose to overturn a line of previously binding precedent upon which he had based his complaint.  The Court took note that it was "most important" to that case that Laber's situation was "not a run-of-the-mill case where the plaintiff's first theory of recovery is based on his own reading of [Fourth Circuit] cases and it turns out that he misinterpreted how that theory would apply to the facts of his case."  Id. (emphasis in original).  The instant case, however, is exactly that type of situation.  The Fourth Circuit also noted that it concluded that Laber had been diligent in the prosecution of his case and in seeking leave to amend.  As explained above, this Court has reached the opposite conclusion with regard to these

plaintiffs' prosecution of their case and the timing of their motion to amend.

Circuit Judge Wilkinson's concurring opinion further illustrates the factual distinctiveness of the Laber case and how the instant case is readily distinguished. Judge Wilkinson immediately remarked that "motions filed post-judgment for leave to amend a complaint are not favored under law," and that after judgment has been entered, the efforts of the defense to win judgment "should not be routinely undone after a decision of the district court alerts a losing party to the deficiencies in its case." Id. at 432. Judge Wilkinson further makes clear that Laber's complaint had indeed been proper prior to the ruling overturning precedent which "squarely and affirmatively authorize[d]" plaintiff's theory and that "[i]n ordinary circumstances, post-judgment motions for leave to amend serve only to string litigation out." Id. at 433.

This case is not one of such unique circumstances as was before the Court of Appeals in Laber. Thus, for the reasons above, this Court finds that because of undue, unexcused delay, as well as prejudice to the opposing parties, and in the interest of justice which weighs in favor of the finality of the judgment, the plaintiffs' motion for leave to file an amended complaint should be, and is denied.

22

B.   <u>Motion to Alter of Amend Judgment</u>

The plaintiffs also argue that this Court should amend its judgment granting summary judgment for the defendants based upon, what they consider to be three basic errors of law made by this Court in reaching its opinion.  The assignments of error are as follows: (1) that this Court did not properly apply the standard for summary judgment; (2) that this Court applied an improper standard for determining accrual of a § 1983 cause of action; and (3) that this Court misconstrued authority on which it relied in granting summary judgment on the statute of limitations issue in defendants' favor.

Initially, this Court finds it beneficial to reiterate its position on the accrual of the statute of limitations in this case.  While 42 U.S.C. § 1983 does not contain an explicit statute of limitations, the United States Code provides that state law shall apply where federal law does not provide a statute of limitations.  42 U.S.C. § 1988.  All 42 U.S.C. § 1983 claims are treated as tort claims for the recovery of personal injuries.  <u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007).  Therefore, the statute of limitations is two years pursuant to the West Virginia "catch-all" statute of

limitations.   W. Va. Code § 55-2-12.[5]   This case was filed on December 3, 2010.

This Court does not believe that, in applying this statute of limitations to the facts of this case, it misapplied the standard for summary judgment.  The plaintiffs argue that this Court failed to draw all reasonable inferences in the plaintiffs' favor, as must be done in the proper determination of a motion for summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The plaintiffs, in support of this allegation, say that this Court improperly relied upon defendant McDiarmid's affidavit to arrive at its legal conclusions regarding when the statute of limitations began to run.

This argument is erroneous.  The plaintiffs base this contention on the fact that they say that they did not have notice of their injury until December 2008, and that the statute of limitations, as a result, began then.  However, such an argument is a legal conclusion, not a factual averment.  It is true that the

---

[5]West Virginia Code Section 55-2-12 provides:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

W. Va. Code § 55-2-12.

24

plaintiffs' proffered legal conclusion is opposed to the conclusion that this Court reached regarding the date upon which the plaintiffs were on notice of their injuries. Nevertheless, that this Court's conclusion was based upon partial reliance upon defendant McDiarmid's factual averments does not mean that this Court inappropriately drew factual inferences in the defendants' favor. The plaintiffs did not offer <u>factual</u> opposition to the facts offered by defendant McDiarmid's affidavit, but rather only advanced legal conclusions about when they were on notice of their injuries. McDiarmid made no conclusions in this regard, but only offered dates when certain events occurred -- which dates were not challenged.

This Court reached its own legal conclusion that, while in opposition to that advanced by the plaintiffs, was based upon unchallenged factual averments. "'When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot resolve the facts in the Plaintiff's favor based solely upon unsupported allegations.'" <u>Boss v. Nissan N. Am.</u>, 228 Fed. App'x 331, 336 (quoting <u>Legg v. Wyeth</u>, 428 F.3d 1317, 1323 (11th Cir. 2005)).

The plaintiffs also argue that this Court resolved factual inferences in the defendants' favor when it found that receipt of the screening subcommittee report constituted inquiry notice of the conflict of interest of defendant Kerr. In making this argument, the plaintiffs mischaracterize this Court's opinion and conclusion with regard to the conflict of interest which caused the

25

plaintiffs' injuries.  The plaintiffs say that the report received no later than August 2008 was ambiguous as to the role that each member of the screening subcommittee played in the process.  This alleged ambiguity is irrelevant to this Court's determination.  As stated in this Court's memorandum opinion and order granting summary judgment to the defendants in this case, it was determined that the constitutional violation in the plaintiffs' complaint was the alleged conflict of interest that existed during the entire investigative process regarding the charges of academic misconduct. (ECF No. 150, *11-12.)  The result of that investigative process, the bringing of charges, was simply the culmination of this allegedly unconstitutional process of which the plaintiffs became aware when they were informed that defendant Kerr was a member of the committee.

As such, the role that the conflicted committee-member played in the preparation of the report, or whether she was "acting in a capacity adverse to her former clients" is unimportant.  The plaintiffs were on notice that the entire process could be tainted when they were informed that a person who they considered to be their former counsel was now a part of a panel assigned to investigate them for the very events and actions that were the subject of her alleged representation in the past.  This would be true regardless of whether defendant Kerr was acting in a capacity for or against them, or if she was acting in any such capacity at

26

all; her mere presence on the review board represented the conflict.

This Court similarly disagrees that it applied an improper standard for determining accrual of the cause of action.  In their argument, the plaintiffs say that this Court failed to assess whether the plaintiffs both knew of their injury, and knew of who injured them in August 2008, the time that the statute of limitations was deemed to have started to run.  Again, defendant Kerr's mere presence on the committee allegedly tainted the process and constituted the plaintiffs' injuries, and at the point that they were informed that she was on the committee, the plaintiffs were aware of who injured them.

Finally, this Court does not agree that it failed to properly apply the authority to this case.  To this point, the plaintiffs argue that this Court committed error in relying upon <u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980), and <u>Chardon v. Fernandez</u>, 454 U.S. 6 (1981).  In support of this contention, the plaintiffs make factual distinctions between those cases and the instant situation, which this Court finds unpersuasive as meaningful differentiations.  Specifically, the plaintiffs focus on the argument that in <u>Ricks</u> and <u>Chardon</u>, the injurious consequences of the conduct accused were final from the time that the plaintiffs discovered that a violation was taking place.  However, these differentiations again mischaracterize the holding of this Court.  As stated above, this Court did not find that the plaintiffs were

27

injured when the charges were brought against them.   More
specifically, in its memorandum opinion and order granting summary
judgment in this case, this Court found:

> The basis of the plaintiffs' due process claims are the
> alleged conflict of interest during the investigation.
> The bringing of academic misconduct charges against the
> plaintiffs is not the violation of due process as alleged
> in the facts produced in the plaintiffs' complaint.
> Rather, as the United States Supreme Court found in <u>Ricks</u>
> and <u>Chardon</u>, the academic misconduct charges are the
> <u>consequences</u> of the alleged discriminatory act at issue,
> here, the alleged conflict of interest and alleged
> tainted investigation that led to the bringing of
> academic misconduct charges.

(ECF No. 150, *12.)

The violation in the plaintiffs' complaint was the allegedly
tainted process, which process and which injuries resulting
therefrom were final upon receipt of the screening subcommittee
report and notice that defendant Kerr was a member of the
committee.  That the injuries became more severe and painful to the
plaintiffs at a later time is not relevant to this inquiry.

Additionally, the plaintiffs' discussion of the Fourth
Circuit's opinion in <u>Franks v. Ross</u>, 313 F.3d 184 (4th Cir. 2002),
is misplaced.  Here, the plaintiffs' injury was not in doubt due to
"obvious factual contingencies," as in <u>Franks</u>.  <u>Id.</u> (internal
citations omitted).  The plaintiffs were injured by the allegedly
tainted process from the time that they were informed that it
existed.  The investigation itself formed that injury.  This Court
disagrees with the plaintiffs that a challenge to the process would
not have been ripe for review at the time that the plaintiffs were

made aware of the conflicted investigation, but such a disagreement is unnecessary at this point.  The plaintiffs' argument based upon Franks is improper, as is the plaintiffs' argument that University's academic misconduct policy precluded them from bringing their claims until the screening subcommittee had issued its final decision on academic misconduct charges.  Franks is not a case that changed the law since this Court rendered its decision, and both it and the academic misconduct policy were available to the plaintiffs when the motions to dismiss were originally briefed.  "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance."  Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).

Indeed, the plaintiffs have already argued the points made in their motion to alter the judgment, and this Court has already considered each of them in its memorandum opinion and order.  The plaintiffs did not submit any new evidence that would warrant altering or amending the earlier order.  Furthermore, there has been no change in the controlling law since this Court issued its order, and this Court does not find that altering or amending the order is necessary to prevent manifest injustice.

V.   <u>Conclusion</u>

For the reasons stated above, the plaintiffs' motion for leave to amend is hereby DENIED.   Further, the plaintiffs' motion to alter or amend judgment is likewise DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein and to the Clerk of United States Court of Appeals for the Fourth Circuit.

DATED:   January 25, 2012


                                        <u>/s/ Frederick P. Stamp, Jr. </u>
                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE

30